IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:18-CV-041-DCK

| | |
|---|---|
| NATHANIEL CANNON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| CHARTER COMMUNICATIONS ) | |
| SHORT TERM DISABILITY PLAN, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER IS BEFORE THE COURT** on Plaintiff's "Motion For Judgment" (Document No. 17) and "Defendant Charter Communications Short Term Disability Plan's Motion For Summary Judgment" (Document No. 19). The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c), and these motions are now ripe for disposition. Having carefully considered the motions, the record, and applicable authority, the undersigned will <u>grant</u> Defendant's motion and <u>deny</u> Plaintiff's motion.

## I.  BACKGROUND

**A. Factual**

Plaintiff Nathaniel Cannon ("Plaintiff" or "Cannon") was employed by Charter Communications ("Charter") as an Order Management Representative on or about January 6, 2012.  (Document No. 17-1, pp. 1, 3) (citing Administrative Record, governing Charter Communications Short Term Disability Plan (the "Plan") documents, and records related to Plaintiff's pre-existing Americans with Disabilities Act ("ADA") claims - Document Nos. 20, 20-

1, 20-2, 20-3 and 20-4 (Bates numbered Charter 000001 through Charter 002075) - (all together, the "Record" or "R.") 803, 904); see also (Document No. 19-2, p. 7).

> In that position, Plaintiff was required to "review orders for accuracy and promptly key[] orders into the biller and make[] calls to try to schedule installation for Business Class Customers." (R. 0803). Plaintiff was required to possess strong communication skills, have the ability to take initiative under minimal supervision, have the ability to perform analysis and solve problems in a changing work environment, work in a high pressure environment, demonstrate strong organizational skills, have the ability to work overtime as needed, and to be able to adhere to all company policies and procedures at all times. (R. 0804).

(Document No. 17-1, p. 3); see also (Document No. 19-2, p. 7).

Charter is a cable provider that offers video, telephone, and high-speed internet services. (Document No. 19-1, p.6). Charter Communications Short Term Disability Plan (the "Plan" or "Defendant") is a self-funded benefit plan organized and existing pursuant to 29 U.S.C. § 1132. (Document No. 1, p. 1; Document No. 19-1, p. 6). The Plan provides short-term disability ("STD") benefits to eligible participants employed by Charter. Id.; see also (R. 681, 707).

> Under the Plan, eligible employees may obtain up to 26 weeks of STD benefits. (R 718.) Claimants must meet the Plan's definition of "totally disabled" in order to be eligible for benefits, and are considered "totally disabled" if, among other things, they "cannot perform the Essential Duties of [their] own occupation." (R 720.)
> Benefit claims under each component program, including the Plan, are evaluated by a claims administrator. Benefits are paid "only if the [c]laims [a]dministrator . . . determines ***in its discretion*** that the applicant is entitled to them." (R 697 (emphasis added).) Sedgwick is the claims administrator that administers the Plan and evaluates STD claims. (R 697, 712.) The Claims Administrator is "the claims fiduciary with ***sole authority*** to determine benefit claims under the terms of the [STD] Program." (R 722 (emphasis added).)

(Document No. 19-1, pp.6-7).

Plaintiff's first absence from work in connection with the underlying disability claim was August 31, 2017. (Document No. 19-1, p. 7) (citing R. 904). On that date, Plaintiff was seen by Gbenga Aluko, M.D. ("Dr. Aluko"), an internal and family medicine physician. Id. Dr. Aluko's treatment notes indicate that Plaintiff reported dizziness and that he "went to cardiology and everything is ok. Not sure if symptoms are vertigo or seasonal allergies." (R. 830). Dr. Aluko further noted a history of vertigo; history of pacemaker; and allergic rhinitis. (R. 832).

Plaintiff returned to Dr. Aluko on September 7, 2017. (Document No. 17-1, pp. 3-4; Document No. 19-1, pp. 7-8). Dr. Aluko then completed a "Concurrent Disability And Leave Statement Of Incapacity/Attending Physician Statement" (R. 736-38). Id. Dr. Aluko's "…Statement" includes the following observations: September 7, 2017 was the beginning and ending date for the period of incapacity; work might be resumed on March 30, 2017; "patient with recurrent vertigo, has had disease, has pacemaker;" disabling diagnoses of "recurrent dizziness, bradycardia, hypertension, hyperlipidemia," as well as having sleep apnea, heart disease, and insomnia; and that Plaintiff advised not to drive during heavy traffic between 7-10 am and 5-6:30 pm. Id.

Also on September 7, 2017, Plaintiff contacted Sedgwick Claims Management Services, Inc. (the Plan's "Claims Administrator" or "Sedgwick") an independent third-party claims administrator to provide notice of his absence due to a claimed disability related to his blood pressure, a pacemaker, and vertigo. (Document No. 19-1, pp. 5, 7) (citing R. 904, 953). The Claims Administrator apparently informed Plaintiff on September 11, 2017, that there were no exam findings as to why he could not perform his job duties, that driving was not part of his job duties, there was conflicting information as to the off work dates of September 7 and March 30,

3

2017, and that exam findings and a treatment plan were needed to support why he could not perform his job functions. (Document No. 19-1, p. 8) (citing R. 945-46).

Dr. Aluko revised his "…Statement" on September 14, 2017, changing the period of disability from August 31, 2017 to February 28, 2018, and checking a box indicating that Plaintiff was not able to perform his job functions. (Document No. 19-1, p. 8) (citing R. 826). Dr. Aluko also provided a letter on Plaintiff's behalf stating:

> This letter is in regards to health information about Mr. Nathaniel Cannon (DOB: 11/11/61). Patient had difficulty focusing and working in the office due to sleep apnea which at times lead to day time somnolence, and recurrent vertigo which can occur without warnings.
>
> Few years back, I have provided his medical records to support working from home.
>
> His diagnosis of severe sleep apnea based on result of sleep studies, bradycardia, pacemaker, vertigo and hypertension are unchanged. He has been stable over the past 2 1/2 years.
>
> As it was in the past with frequent dizziness, vertigo, somnolence and fatigue when he was going into the office, these symptoms are back now that he went back to work in office.
>
> My treatment plan for the patient will include Mr. Cannon seeing me monthly for medications review or adjustment as needed.

(R. 829); see also (Document No. 17-1, p. 4; Document No. 19-1, p. 9).

On September 18, 2017, the Claims Administrator informed Plaintiff that his claim was being reviewed by a clinical specialist pursuant to the Plan, and that he was required to submit additional medical information supporting his disability claim by September 27, 2017. (Document No. 19-1, p. 9; R. 820). On or about September 19, 2017, the Claims Administrator's clinical specialist issued the following request for objective medical evidence or documentation:

4

> Please provide the contact information for the referral to Urology and Neurology.
>
> Can the patient return to work with restrictions, since the job is sedentary?
>
> It is indicated that the EE cannot drive in traffic, but is he able to perform his current job functions which are sedentary.
>
> Please provide Physical Exam findings/Functional limitations to substantiate further disability from SEDENTARY WORK.

(R. 811, 817); see also (Document No. 19-1, p. 9).

On September 21, 2017, the Claims Administrator sent a letter to Plaintiff noting that it had made unsuccessful attempts to reach him and that if sufficient information was not provided in a timely manner his disability request may be denied, and requesting that he "[p]lease contact us immediately." (Document No. 19-1, p. 9; R. 812). Plaintiff was also informed by the Claims Administrator in a telephone call that the currently provided records did not support disability. (Document No. 19-1, pp. 9-10; R. 933).

On or about September 25, 2017, Dr. Aluko responded to the Claim Specialist's questions listed above. (R. 809, 817; Document No. 17-1, p. 4; Document No. 19-1, p. 10). Dr. Aluko referenced the records he had already provided and stated that he recommended that Plaintiff work from home. Id. Dr. Aluko did not provide any additional medical information, nor did he state that Plaintiff was unable to perform his job functions. Id.

The Claims Administrator denied Plaintiff's STD benefits on October 3, 2017. (R. 1047-1048; Document No. 17-1, p. 4; Document No. 19-1, p. 10). It was determined based on review of the documents provided by Dr. Aluko that Plaintiff did not qualify for STD benefits under the Plan. Id. The Claims Administrator noted that "'[t]here is no clear indication of severity" . . . "[s]ubjective symptoms were noted, Cardiologist has no remarkable exam findings no medical or

5

treatment plan to support disability." Id.  Apparently, Plaintiff and the Claims Administrator discussed the claim, the records and the appeals process that same day and Plaintiff acknowledged that he "was able to perform 100% of his job duties at home." (Document No. 23, p. 7) (quoting R. 920).

Plaintiff appealed the initial denial of benefits on October 5, 2017.  (R. 958-963, 2019-2023; Document No. 17-1, pp. 4-5;  Document No. 19-1, p. 10).  Plaintiff's appeal includes a letter stating that he disagreed with the denial of benefits and that he had sought STD benefits because he was no longer being permitted to work from home.  Id.  Plaintiff advised that he was meeting with his primary physician on October 12 and his cardiologist on October 10, and would "forward any other pertinent information."  (R. 962).  Plaintiff also requested "all of the objective findings for my Short Term Disability Claim as well as my Accommodations claims afforded me per HIPAA ACT" . . . and "the rationale report findings of nurse Danni."  (Document No. 17-1, p. 5) (quoting R. 2027).  Defendant contends that it informed Plaintiff that his request for documents, which substantially consisted of his own medical records, needed to be submitted in writing and would take 7-10 business days to send out.  (Document No. 23, pp.7-8) (citing Tr. 917, 963).

On October 10, 2017, the Claims Administrator acknowledged Plaintiff's request for additional time to submit medical records and agreed to suspend its review for 14 days.  (R. 1024; (Document No. 17-1, p. 5;  Document No. 19-1, p. 11).  The Claims Administrator noted that the remaining 41 days of the 45-day determination period would commence on October 24, 2017.  Id.

Plaintiff concedes that on or about October 12, 2017, "**assuming all relevant information had been submitted, [he] advised Defendant it could begin its review**." (Document No. 17-1, p. 5) (citing R. 907) (emphasis added);  see also (Document No. 19-1, p. 11;  R. 906-907).  No

6

further medical records were ever received by the Claims Administrator. (Document No. 19-1, p. 11).

Neil Gupta, M.D. ("Dr. Gupta"), board certified in internal medicine, reviewed Plaintiff's medical file on or about October 19, 2017. (R. 1056-1060; Document No. 17-1, p. 5; Document No. 19-1, p. 11). Dr. Gupta determined that clinical evidence did not support a functional impairment during the August 31, 2017 to present time frame. Id. Dr. Gupta noted that Plaintiff was not experiencing new, or worsening, symptoms. Id.

Mark Reploeg, M.D. ("Dr. Reploeg"), board certified in neurology and sleep medicine, also reviewed Plaintiff's file on or about October 19, 2017. (R. 1062-1065; Document No. 17-1, pp. 6-7; Document No. 19-1, pp. 11-12). Dr. Reploeg opined that "from a Neurology and Sleep Medicine perspective the claimant is not impaired during the time period under review." Id.

On October 20, 2017, the Claims Administrator completed its review and denied Plaintiff's appeal. (R. 1076-1078; Document No. 17-1, p. 7; Document No. 19-1, p. 12). The final denial letter noted that Plaintiff's medical records had been reviewed by two different independent and board certified doctor/specialists. Id. Both doctors opined that Plaintiff was not impaired from performing the essential functions of his occupation. Id. The Claims Administrator then concluded: "[a]s the medical information in the file does not support your inability to perform your own occupation, as defined by the Plan quoted above, we have no alternative other than to reaffirm the denial of benefits for the period of 08/31/2017 through your release to work." (R. 1077).

The Claims Administrator then advised Plaintiff that he had the right to bring a civil action under the Employee Retirement Income Security Act of 1974 ("ERISA"). (R. 1078).

7

## B. Procedural

Plaintiff initiated this action with the filing of his "Complaint" against Defendant Charter Communications Short Term Disability Plan pursuant to 29 U.S.C. § 1132(a)(1)(B), on January 26, 2018. (Document No. 1). Plaintiff seeks a declaration that he is entitled to STD benefits, as well as attorney's fees and costs. (Document No. 1, p. 3). "Defendant's Answer And Affirmative Defenses" (Document No. 4) was filed on February 27, 2018.

On March 19, 2018, the parties filed a "Joint Rule 26(f) And LCvR 16.1(b) Report" (Document No. 10) and a "Joint Stipulation of Consent To Exercise Jurisdiction by a United States Magistrate Judge" (Document No. 11). The parties further agreed that:

> because the applicable plan in this ERISA matter grants a third-party administrator the discretionary authority to determine eligibility for benefits and interpret the plan's terms and provisions, an arbitrary and capricious standard of review applies and the Court's review of the challenged claim decision is limited to the information the third-party administrator had before it at the time its decision was made. Thus, no discovery beyond the administrative record and relevant ERISA Plan documents is necessary or appropriate in this matter.

(Document No. 10, p. 1).

The undersigned issued a "Pretrial Order And Case Management Plan" (Document No. 12 on April 5, 2018. The "…Case Management" includes the following deadlines: discovery completion – May 11, 2018; ADR report – June 11, 2018; motions deadline – July 11, 2018; and trial – January 7, 2019. (Document No. 12, p. 1). Mediator M. Ann Anderson filed a report on June 11, 2018, stating that the parties attempt to resolve this dispute had reached an impasse. (Document No. 13).

Following amendment to the case deadlines, the parties' pending dispositive motions were filed on August 8, 2018. (Document Nos. 17 and 19). The parties also filed a "Joint Stipulation"

(Document No. 19-2) agreeing that "the Court may dispose of this claim based on this document, the attachments hereto, the parties' cross-memoranda in support of judgment, and any oral argument thereon." (Document No. 19-2) (citing Document Nos. 20, 20-1, 20-2, 20-3 and 20-4 (Bates numbered Charter 000001 through Charter 002075)).

The parties' responses were then filed on August 22, 2018. (Document Nos. 23 and 24). Defendant filed a timely reply brief on August 29, 2018; however, Plaintiff failed to file a reply brief,or notice of intent not to reply, as required by Local Rule 7.1(e).

This matter is now ripe for review and disposition.

## II. STANDARD OF REVIEW

The standard of review here is familiar. Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted). Only disputes between the parties over material facts (determined by reference to the substantive law) that might affect the outcome of the case properly preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." Id.

Once the movant's initial burden is met, the burden shifts to the nonmoving party. Webb v. K.R. Drenth Trucking, Inc., 780 F.Supp.2d 409 (W.D.N.C. 2011). The nonmoving party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading,

9

but ... must set forth specific facts showing there is a genuine issue for trial." Anderson, 477 U.S. at 248. In deciding a motion for summary judgment, a court views the evidence in the light most favorable to the non-moving party, that is, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255. At summary judgment, it is inappropriate for a court to weigh evidence or make credibility determinations. Id.

When considering cross-motions for summary judgment, a court evaluates each motion separately on its own merits using the standard set forth above. See Rossignol v. Voorhaar, 316 F.3d 516, 522 (4th Cir. 2003); accord Local 2-1971 of Pace Int'l Union v. Cooper, 364 F.Supp.2d 546, 554 (W.D.N.C. 2005). Both Plaintiff and Defendant have moved for summary judgment, and the Court will analyze each motion in turn.

### III. DISCUSSION

As an initial matter, the undersigned notes that the parties agree that pursuant to the Plan, the Claims Administrator here had discretionary authority to make eligibility determinations, and that **the district court reviews the administrator's decision under the abuse of discretion standard**. See (Document Nos. 17-1, p. 8 and Document No. 19-1, pp.13-14) (citing Wilkinson v. Sun Life & Health Ins. Co., 674 Fed.Appx. 294, 298-99 (4th Cir. 2017); Helton v. AT&T Inc., 709 F.3d 343, 351 (4th Cir. 2013); Hensley v. Int'l Bus. Machines Corp., 123 Fed.Appx. 534, 537 (4th Cir. 2004); and Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan, 201 F.3d 335, 344 (4th Cir. 2000)).

> "**Under the abuse of discretion standard**, **this circuit will uphold the decision of a plan administrator if the decision is reasonable, even if this court would have reached a contrary conclusion upon an independent review**. *See Fortier v. Principal Life Ins. Co.*, 66 F.3d 231, 235 (4th Cir. 2012). A **decision is reasonable when the decision "is the result of a deliberate, principled reasoning process, and is supported by substantial evidence** . . . ." *Helton,* 709 F.3d at 351

(internal quotation marks and citation omitted). In evaluating whether a plan administrator abused its discretion, this circuit has identified the following eight nonexclusive "*Booth* factors":

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decision making process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have."

(Document No. 17-1, p. 9) (quoting Booth v. Wal–Mart Stores, Inc. Assocs. Health and Welfare Plan, 201 F.3d 335, 342–43 (4th Cir. 2000) (emphasis added). See also (Document No. 19-1, p. 14) and Wilkinson, 674 Fed. Appx. at 299-300.

## A. Plaintiff's "Motion For Judgment"

### 1. Request for Documents

Plaintiff first argues that Defendant abused its discretion by "ignoring Plaintiff's request for documents upon which the denial was based." (Document No. 17-1, p. 9). Plaintiff contends that in his October 5, 2017 letter he had "requested that Defendant send him each and every document upon which the denial of his claim was based." (Document No. 17-1, p. 11). Plaintiff concludes that Defendant's failure to process his request for documents until October 26, 2017, was an abuse of discretion that denied him a reasonable opportunity to respond. (Document No. 17-1, p. 12) (citing 29 C.F.R. § 25630.503-1(h)(2)(iii) ("a claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits")).

In response, Defendant notes that Plaintiff did not include this alleged violation of 29 C.F.R. § 25630.503-1(h)(2)(iii) in his Complaint. (Document No. 23, p. 10) (citing Document No. 1) and (Worsley v. Aetna Life Ins. Co., 3:07-CV-500-RJC-DCK, 780 F.Supp.2d 397, 406 (W.D.N.C. 2011)).

> Where a party does not "plead a violation of . . . § 2560.503–1(h)(2) . . . which is the proper method for asserting such a claim," the court should only consider failure to provide documents "as a factor in determining whether [the claims administrator] abused its discretion." *Worsley v. Aetna Life Ins. Co.*, 780 F. Supp. 2d 397, 406 (W.D.N.C. 2011) (finding that a delay to provide documents until just prior to litigation "was not prejudicial" where plaintiff already had, or had access to, the information in the unfurnished records).

Id.

Defendant further notes that Plaintiff did not ask to toll the appeal while waiting for receipt of the records; to the contrary, Plaintiff expressly advised the Claims Administrator that all relevant records were in its possession and that it could begin its review. (Document No. 23, p. 10) (citing R. 906-907); see also (Document No. 17-1, p.5) (citing Tr. 907).

Defendant goes on to assert that the "minimal delay" in producing the requested records was harmless because: (1) most of the documents were treatment records from Plaintiff's own physician; and (2) Plaintiff had been informed – in detail – as to the content of the requested documents. Id. (citing R. 908-909, 917). Defendant also observes that Plaintiff does not challenge the accuracy of the records considered by Defendant.

Defendant concludes that a delay in furnishing the records here does not warrant overturning or remanding the Claims Administrator's sound decision, especially since Plaintiff has failed to identify any defect with the records or with the decision to deny benefits. (Document No. 23, p. 11).

Plaintiff failed to file a reply brief that might have rebutted Defendant's arguments or attempted to distinguish Worley v. Aetna Life Ins. Co. The undersigned agrees that even if Defendant's allegedly delayed production of documents violated § 25630.503-1(h)(2)(iii), such a violation was not prejudicial. See Worley, 780 F.Supp.2d at 406-407.

2. Appeal Process

Next, Plaintiff argues that Defendant abused its discretion by engaging in an unreasonably hasty appeal process and ignoring and/or failing to obtain medical information related to Plaintiff's appeal. (Document No. 17-1, pp. 12-20). Plaintiff contends that Defendant's review was "clearly deficient, and was not the result of a 'deliberate, principled reasoning process.'" (Document No. 17-1, p. 13).

Specifically, Plaintiff suggests that Defendant made no effort to review records related to treatment he received on October 10, 12, and 18, 2017. (Document No. 17-1, pp. 13-14). In addition, Plaintiff contends that Defendant could not adequately review its physician's reports received on October 19, and then issue a denial on October 20, 2017. (Document No. 17-1, p. 16). Plaintiff further contends that Dr. Reploeg's opinion was flawed because he did not allow a reasonable time to speak to Plaintiff's treating physician before rendering an opinion. (Document No. 17-1, pp. 18-20).

In response, Defendant asserts that Plaintiff does not claim an inability to perform *any* of his essential job duties and concedes that driving (his only arguable limitation) is not one of his essential duties. (Document No. 23, p. 11). Defendant contends that this fact alone is enough to end the Court's inquiry. Id.

Addressing Plaintiff's arguments, Defendant first notes that Plaintiff had told Defendant that Dr. Aluko was his only medical provider and that on October 13, 2017, Plaintiff had reported

that all documentation had been submitted and that the review process should go forward. (Document No. 23, p. 12) (citing R. 906-909). Moreover, Plaintiff has acknowledged that it was his burden to provide relevant information and substantiate disability. (Document No. 23, p. 13). Defendant argues that Plaintiff has not identified *any* contrary information that was actually ignored. Id. Defendant also notes that it did not need more than one day to review two reports totaling nine pages, where neither physician found any evidence to support disability. Id.

Defendant next asserts that Plaintiff had repeatedly represented that his file was complete and that its reviewing physicians considered all of Plaintiff's medical records before issuing their decisions. (Document No. 23, p. 14). Defendant notes that Plaintiff has not alluded to any evidence that would have changed the benefits determination – and that Dr. Aluko and Plaintiff concede that he can fulfill all his essential job duties. Id.

Finally, Defendant observes that Dr. Gupta did have a peer-to-peer conversation with Dr. Aluko, and that Dr. Reploeg's attempts to do the same went unanswered. (Document No. 23, p. 15). Defendant contends that Dr. Reploeg's attempts were sufficient, and went beyond what is required under relevant Fourth Circuit caselaw. (Document No. 23, pp. 15-16) (citations omitted).

The undersigned again finds Defendant's argument in response most persuasive.

## B. Defendant's "…Motion For Summary Judgment"

In support of its motion for summary judgment, Defendant focuses on arguments that the Claims Administrator's decision was the product of a deliberate, principled reasoning process that was based on substantial evidence. (Document No. 19-1, pp. 15-19). Defendant notes that the Claims Administrator had a clinical specialist review the claim prior to initially denying the request for benefits, and that its decision was upheld on appeal after referring the claim to two independent physicians who found no evidence that Plaintiff was unable to perform his job duties. (Document

14

No. 19-1, p. 16) (citing Havens v. Metro Life Ins. Co., 2006 WL 2371117, at *2-3, 5-6 (S.D.W.Va. Aug. 14, 2006) and R. 817-819, 1088-1090).

Defendant further notes that both Dr. Gupta and Dr. Reploeg opined that Plaintiff was not functionally impaired. (Document No. 19-1, p. 17). Defendant asserts that, as in Havens, the Claim Administrator here properly determined that: (1) Plaintiff's symptoms were within normal limits; (2) no objective clinical findings demonstrating functional limitations were observed; and (3) there was a lack of definitive objective evidence that would preclude Plaintiff from performing his occupation. Id. (citing Havens, 2006 WL 2371117, at *5-6).

Finally, Defendant argues that the only limitation identified by Plaintiff's own physician, Dr. Aluko, was an inability to drive. (Document No. 19-1, p. 18) (citing R. 962). However, that limitation is irrelevant here because driving was not one of Plaintiff's essential job duties. Id. Moreover, Defendant notes that Plaintiff worked for a number of years with the same vertigo and sleep apnea conditions – without alleging disability. Id.

In response, Plaintiff argues that Defendant did not allow sufficient time for him to submit additional information to support his claim. (Document No. 24, pp. 1-2). Plaintiff further argues that Defendant's memorandum wholly ignores that Plaintiff's limitations had been accommodated for years by allowing him to work from home. (Document No. 24, pp. 2-3). Plaintiff then suggests that Defendant's failure to consider Plaintiff's restriction to work from home shows that Defendant's review process was flawed. Id.

Defendant filed a timely "…Reply In Support Of Summary Judgment" (Document No. 25). In that reply, Defendant again contends that Plaintiff was provided ample time to submit all relevant records, and that Plaintiff had informed the Claims Administrator that all documentation had been submitted. (Document No. 25, p. 1); see also (R. 906-907). Defendant notes that a year

later, Plaintiff still has not identified what treatment records were allegedly overlooked or what additional information he could have provided. (Document No. 25, p. 2).

Regarding accommodations, Defendant argues that Plaintiff is missing the point. Id. Defendant emphasizes that what is key here is that the Claims Administrator, Plaintiff, and Plaintiff's physician have all acknowledged that Plaintiff "could perform *all* essential duties of his occupation." Id. Defendant concludes that nothing in the Plan or legal precedent compels a finding of disability where an employee can unquestionably perform each of his job functions and his only claimed restriction is not an essential duty of his occupation. Id.

## IV.    CONCLUSION

Contrary to Plaintiff's suggestions, it appears that Defendant's decision to deny STD benefits was "'the result of a deliberate, principled reasoning process' and 'supported by substantial evidence.'" Worsley, 780 F.Supp.2d at 408 (quoting Brogan, 105 F.3d 158, 161 (4th Cir. 1997)). The undersigned is convinced based on Defendant's arguments and a careful review of the Record, that even *if* Defendant violated the applicable regulations in any way, such violation was harmless and would not change the final determination regarding Plaintiff's claim for benefits. Based on the foregoing, the undersigned finds that there is no genuine issue for trial, and that Plaintiff's claim should be dismissed. As noted above, the parties have agreed that the Court may dispose of Plaintiff's claim based on the Record and the parties' cross-motions and memoranda. (Document No. 19-2, p. 2).

**IT IS, THEREFORE, ORDERED** that Plaintiff's "Motion For Judgment" (Document No. 17) is **DENIED**.

**IT IS FURTHER ORDERED** that "Defendant Charter Communications Short Term Disability Plan's Motion For Summary Judgment" (Document No. 19) is **GRANTED**.

**SO ORDERED**.

Signed: January 16, 2019

David C. Keesler
United States Magistrate Judge